UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| ORION LABS TECH, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ZOHO CORPORATION PVT LIMITED, ZOHO CORPORATION, and ZOHO TECHNOLOGIES CORPORATION, <br><br> Defendants. | Civil Action No. 7:25-cv-00480-DC-DTG |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF ORION LABS TECH, LLC'S CORRECTED COMPLAINT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 1

II.  THE ASSERTED PATENTS .................................................................................... 1

III. LEGAL STANDARD ................................................................................................ 2

IV.  THE ASSERTED PATENTS ARE INVALID FOR ATTEMPTING TO CLAIM PATENT INELIGIBLE SUBJECT MATTER ......................................................... 3

    A.    *Alice* Step One: Claim 1 of the '430 Patent Is Directed to the Abstract Idea of a Virtual Assistant in Group Communications ........................................... 3

    B.    *Alice* Step Two: There Is No Inventive Concept ....................................... 5

        1.    Every claimed component is generic and conventional ............................. 6

        2.    Generic "special-purpose computing system" language does not save the claims. ................................................................................................... 7

    C.    Claim 1 is Representative of the '430 Patent Claims. ............................. 8

    D.    The '003 Patent is Equally—if not more—Abstract. .............................. 9

V.   THE § 101 INQUIRY IS RIPE FOR RESOLUTION ........................................... 11

VI.  CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ....................................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 13

*Bilski v. Kappos*, 561 U.S. 593 (2010) ........................................................................... 2, 6, 9, 12

*Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024) ................................. 8

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ............................................ 7

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) ....................................... 7

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352 (Fed. Cir. 2017) ... 3, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) .......................................................................................... 5, 9, 10

*Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) ...................................... 2

*Diamond v. Diehr*, 450 U.S. 175 (1981) ................................................................................... 10

*Elec. Power Grp., LLC v. ALSTOM SA*, 830 F.3d 1350 (Fed. Cir. 2016) ................................. 6, 8

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103 (D.D.C. 2015) ... 5

*Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) .................................................. 5

*EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616 (Fed. Cir. 2015) ................... 9

*Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043 (Fed. Cir. 2023) ............. 5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 838 F.3d 1307 (Fed. Cir. 2016) ............ 8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ................................ 7, 9

*McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) .......................... 6

*Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024) ............................................ 3

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ................................................ 4

*Simio, LLC v. FlexSim Software Products*, 983 F.3d 1353 (Fed. Cir. 2020) .............................. 12

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, (Fed. Cir. 2023) ................................. 13

*Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) .................................................. 2

*UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984 (Fed. Cir. 2024) ................................................3, 13

*Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021) ..............................................................................8

I.       INTRODUCTION

This case should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Asserted Patents—U.S. Patent Nos. 10,110,430 (the "'430 Patent") and 10,462,003 (the "'003 Patent")—are patent-ineligible under 35 U.S.C. § 101. They claim nothing more than the abstract idea of incorporating a virtual assistant into group communications to perform tasks that humans have always performed—like recording, auditing, and providing ad hoc services—using generic computing components for their conventional purposes.

The Complaint (Dkt. 11) contains no factual allegations that could alter this analysis. It offers only conclusory assertions that the claims are "not directed to an abstract idea" and include "inventive components." Complaint ¶¶ 38-39, 54-55. It identifies no specific technological improvement and does not explain how the claimed invention differs from the well-known practice of adding a human assistant to a group communication. These bare legal conclusions are insufficient to demonstrate the patent-eligibility of the claims at the 12(b)(6) stage.

II.      THE ASSERTED PATENTS

The '430 and '003 Patents share the same specification and are directed to the same general field: intelligent software "agents," or "bots," in "communication groups." *See, e.g.,* '430 Patent at 1:15-17. The '003 Patent is a continuation of the '430 Patent. '003 Patent at 1.

"Communication groups" are a defined collection of user devices engaged in interactive communications and data exchange. '430 Patent at 2:27-39. An example communication group may include a "team of firefighters" responding to a fire, where each firefighter has a "wearable push-to-talk communication device" serving as a "node" in the group. *Id.* at 2:46-48, 4:29-53.

The focus of the patents is providing an "intelligent agent" to provide services to a communications group as a "robot assistant" or "virtual assistant." *See, e.g., id.* at 1:15-17, 7:30-

41. This "intelligent agent" joins the communication group as another "node" alongside the human users. *Id.* at Fig. 1, Fig. 2. The virtual assistant node can record conversations, provide voice-based assistance and services, use voice commands to retrieve information like weather reports, or provide features such as audio transcription. *Id.* at 4:27-53, 5:54-6:9.

The specification describes the "intelligent agent" only as generic "software" providing black box "modules" for functions like voice recognition, assistance, auditing, or security. *Id.* at Fig. 2, 7:10-41; 8:20-27. The "personal communication member nodes" are generic "computing system[s]." *Id.* at 2:7-12, 2:40-48. The network links can be any "combination[], variation[], or improvement[]" of known network links using "any of a variety of protocols . . . or any suitable protocol, variation, or combination thereof." *Id.* at 2:59-3:30, 7:49-8:3.

**III.    LEGAL STANDARD**

Patent eligibility under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). It is properly determined on the pleadings "when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018); *Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014).

Under the two-step test of *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), courts first analyze whether "the claims at issue are directed to one of [the] patent-ineligible concepts," like an abstract idea. *Id.* at 217. If so, courts determine whether the claim recites additional elements that transform the claim into a patent-eligible application—an "inventive concept" amounting to more than merely applying the abstract idea. *Id.*

Courts can limit the analysis to representative claims when claims are "substantially similar and linked to the same" ineligible concept. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). "[S]ometimes a claim's meaning may

2

be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed." *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024).

The challenger who identifies a claim as representative of a group of claims must initially show that the claims are "substantially similar and linked to the same" ineligible concept. *Cleveland Clinic Found.*, 859 F.3d at 1360. "Once this occurs, the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024).

## IV. THE ASSERTED PATENTS ARE INVALID FOR ATTEMPTING TO CLAIM PATENT INELIGIBLE SUBJECT MATTER

All the Asserted Patents' claims are invalid under § 101. Because the patents are all directed to related methods, share similar specifications, and have insubstantial claim differences that do not alter their primary focus or claimed advance, this analysis can be performed with representative claims.

### A. *Alice* Step One: Claim 1 of the '430 Patent Is Directed to the Abstract Idea of a Virtual Assistant in Group Communications

When determining whether a claim is directed to an abstract idea, courts consider the "focus" or "claimed advance" of the claim. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Claim 1 of the '430 Patent is directed to the abstract idea of incorporating a computer assistant into a communication group. Here, Claim 1's advance is the instantiation of an "intelligent agent as a virtual assistant" in a communication group to record and audit communications—the automation of a well-known human activity using conventional computing components.

3

Assistants joining group communications are a long-standing practice: a court reporter attends a teleconference and transcribes the conversation; IT personnel manage a videoconference; a translator provides language services; a paralegal retrieves documents during a discussion. The following chart illustrates how each element of Claim 1 maps to this well-known human activity:

| Claim 1 Element | Human Activity (Deposition Teleconference) |
|---|---|
| A method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes | A court reporting service hosts a teleconference |
| receiving instructions from at least one of the plurality of personal communication member nodes to instantiate an intelligent agent | The service technician receives a request to add a court reporter |
| instantiating the intelligent agent as a virtual assistant communication member node in the communication group | The technician calls the court reporter to join the teleconference bridge as another participant |
| the instantiated intelligent agent recording and auditing communications among and between the plurality of personal communication member nodes in the communication group | The court reporter transcribes the conversations |

The claims describe a generic computer programmed to automate this well-known process. "Automating a previously manual process is not sufficient for patent eligibility." *Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043, at *4 (Fed. Cir. 2023). "This abstract concept of collecting, recognizing, and storing data is not patent-eligible." *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 112 (D.D.C. 2015); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

As the *Enfish* court explained, the key question is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish LLC v. Microsoft Corp.,* 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). Here, the patents do not improve

how computers process data, communicate over networks, or manage memory. They use computers as tools to do what human assistants have always done—join a group communication and provide services—but without the delays and limitations of human participants. That is precisely what *Enfish* identified as abstract.

The claims here are distinguishable from cases where the Federal Circuit has found claims non-abstract. For example, in *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), the claims recited specific rules—morph weight sets applied at defined sub-sequences of phonemes—producing automated lip-syncing through a fundamentally different approach than how humans performed the task. Here, the "intelligent agent" does the same thing a human assistant does: it joins a group communication and records and audits the conversation. The claim recites no specific algorithm or method that differs from how a human would perform these tasks. Instead, it describes the *result*—a virtual assistant that records and audits communications—without specifying a technological means. See *Elec. Power Grp., LLC v. ALSTOM SA*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (cautioning against claims "so result-focused, so functional, as to effectively cover any solution to an identified problem").

The breadth of the claims confirms their abstract character. Claim 1 covers *any* method of instantiating *any* intelligent agent as a virtual assistant in *any* communication group to record and audit. It imposes no limitation on the type of intelligent agent, the way to record or audit, or the architecture of the group. If upheld, the claims would preempt the entire concept of adding an AI assistant to any group communication—the kind of abstract-idea monopoly that § 101 is designed to prevent. See *Alice*, 573 U.S. at 216; *Bilski*, 561 U.S. at 611-12.

### B.     *Alice* Step Two: There Is No Inventive Concept

A claim fails *Alice* step two if its "only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques." *BSG Tech LLC v.*

5

*Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018). The inventive concept must contribute "significantly more" than the abstract idea itself. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72-73 (2012). The claims fail this test; claim 1 is "simply an abstract-idea-based solution implemented with generic technical components in a conventional way." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 775 (Fed. Cir. 2019).

### 1. Every claimed component is generic and conventional

That Claim 1 is merely applying the abstract idea with conventional techniques is clear from its use of generic language that is often used to describe human activity rather than exclusively describe elements in a technological domain. Terms like "communication groups," "personal communication," "nodes," "intelligent agent," "assistant," and "recording and auditing" are typically used to describe human networks, roles, or tasks rather than just computing systems. These are implemented using nearly any variety of computing network, device, or technique. Because this "amount[s] to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified, generic computer," these terms cannot make the abstract idea patent eligible. *Alice*, 573 U.S. at 225–26.

The specification confirms that every component is described at the highest level of generality. The "personal communication member nodes" are generic "computing system[s]" comprising "transceivers, audio transducers, processing systems, communication interfaces, environmental sensors, accelerometers, gyroscopes, Global Positioning System (GPS) receivers, user interfaces, and other systems." '430 Patent at 2:40-48. The "intelligent agent" is described as generic "software" providing black box "modules." *Id.* at Fig. 2, 7:10-41, 8:20-27. These modules are software implementations of functions humans have always performed: the voice recognition module "can adapt to individual language usage and preferences"; users "can dictate instructions in natural language." *Id.* at 8:27-46.

6

When the conventional features are removed, only one thing remains as the alleged "advance over the prior art": instantiating an "intelligent agent as a virtual assistant" "in the communication group." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1369 (Fed. Cir. 2024). This is an attempt to claim the desired result—a virtual assistant capable of recording and auditing a group conversation—not a specific technological means of achieving it. *See Elec. Power Grp.*, 830 F.3d at 1356.

"Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology." *Elec. Power Grp.*, 830 F.3d at 1355; *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021). Nor does the arrangement of these conventional components amount to "significantly more." *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 838 F.3d 1307, 1315 (Fed. Cir. 2016).

### 2. Generic "special-purpose computing system" language does not save the claims.

While the specification states that the intelligent agent software can "transform processing circuitry . . . from a general-purpose computing system into a special-purpose computing system," this language does not establish an inventive concept. '430 Patent at 13:30-35.

First, a closer look at the language undercuts the argument. It states: "*In general*, software 403 can . . . transform processing circuitry 408 from a general-purpose computing system into a special-purpose computing system." *Id.* at 13:30-35 (emphasis added). The phrase "in general" reveals that this is a statement about what all software does—not something specific to the claimed invention. Any software loaded onto a processor makes it a "special-purpose" system in this trivial sense. *See Mayo*, 566 U.S. at 76-77 (citing *Bilski*, 561 U.S. 593) (rejecting the "machine or transformation test").

7

And the Federal Circuit has specifically rejected the argument that loading software onto a general-purpose computer to create a "special purpose computer" confers patent eligibility. *See EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015) ("[T]o use the language of *Alappat*—the general purpose computer becomes a special purpose computer when loaded with the special programming, so a general purpose computer or microprocessor no longer lends sufficient structure to the claim.").

### C.     Claim 1 is Representative of the '430 Patent Claims.

When claims are "substantially similar and linked to the same abstract idea," courts regularly look to representative claims to perform the § 101 analysis. *Content Extraction*, 776 F.3d at 1349; *Alice*, 573 U.S. at 224–26 (invalidating over two-hundred claims across four patents based on two representative claims). Because the remaining claims are directed to the same features in some narrowed way or add features that do not alter the claim's focus on the abstract idea of "virtual" assistants in group communications, Claim 1 is representative of all the '430 Patent's claims.

The '430 Patent contains 17 claims across three independent claims. Claims 7 and 13 recite the same substantive limitations as Claim 1, differing only minor ways—claim 7 is a computer-readable medium claim, and claim 13 is a method of using a system. The dependent claims add only token limitations: voice instructions (claims 2, 8, 15), generic security and encryption (claims 3, 9, 17), execution in a generic "cloud" system (claims 4, 10), a generic "management system" (claims 5, 11, 14), and use with conventional "wearable push-to-talk devices" (claims 6, 12, 19). None of these transform the underlying abstract idea. "[I]nsignificant post-solution activity will not transform an unpatentable principle into a patentable process." *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981).

D.   **The '003 Patent is Equally—if not more—Abstract.**

The '430 and '003 Patents share a specification and their substantially similar claims are linked to the same abstract idea. Thus Claim 1 of the '430 Patent is representative. *See Content Extraction*, 776 F.3d at 1349; *Alice*, 573 U.S. at 224-26.

Claim 1 of the '003 Patent differs from Claim 1 of the '430 Patent in two respects: (1) it adds a limitation that the user specifies "where to instantiate the intelligent agent," and (2) it broadens the agent's task from "recording and auditing" to performing an unspecified "service." Neither difference alters the abstract character of the claim. A side-by-side comparison:

| '430 Patent, Claim 1 | '003 Patent, Claim 1 |
|---|---|
| A method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising: | A method of managing a communication group, wherein the communication group comprises a plurality of personal communication member nodes, the method comprising: |
| receiving instructions from at least one of the plurality of personal communication member nodes to instantiate an intelligent agent; | receiving instructions from at least one of the plurality of personal communication nodes to: instantiate an intelligent agent; and ***where to instantiate the intelligent agent;*** |
| instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and | instantiating the intelligent agent as a virtual assistant communication member node in the communication group; and |
| ***the instantiated intelligent agent recording and auditing communications*** among and between the plurality of personal communication member nodes in the communication group. | ***the instantiated intelligent agent performing a service*** for one or more personal communication member nodes in the communication group. |

The '003 Patent's 23 claims revolve around the same core concept as the '430 Patent. Its additions—"where to instantiate" and a generic "service"—do not alter the focus. Claims 21-23 recite instantiation at various locations (a host node, a physical location, a virtual machine), but the patent treats these as interchangeable. *See* '003 Patent at 3:67-4:6. These are post-solution limitations that do not provide a technological innovation.

The "where to instantiate" limitation is an abstract management decision, not a technological innovation. The specification gives only cursory treatment to this element: "In

9

some implementations, a user or node 102-104 can specify where and/or how node 106 is to be executed (e.g., by selecting a specific host node or host computing system, or by specifying a physical location, where specified locations can include a home or business server, a country of execution for distributed computing systems, and others)." '003 Patent at 2:64-67, 5:51-57. In the human-activity analogy, a participant might instruct a coordinator to have the court reporter join from the same office rather than dialing in from a remote location. Choosing *where* to place a support resource is an organizational decision, not a technological one.

Broadening the services from the agent from "recording and auditing" to any generic "service" makes the '003 Patent more abstract, not less. Dependent claims 4, 11, and 18 enumerate the services the agent can perform: "recording communications," "auditing communications," "performing a search," "performing audio transcription," and "annotating communications." *See* '003 Patent at cl. 4. All are tasks that human assistants have performed in group communications. Reciting a laundry list of human tasks does not transform an abstract concept into a patent-eligible invention. The '003 Patent extends the '430 Patent's claim from one human task to *all* human tasks a virtual assistant might perform—broader preemption of the same abstract idea.

The patent itself treats the location of instantiation as interchangeable: system components "may be separate entities," or "combined into a single entity," or "can be implemented in any other suitable fashion." '003 Patent at 3:67-4:6. This indifference to implementation confirms that instantiation location is a post-solution design choice. *See Bilski*, 561 U.S. at 612 ("limiting an abstract idea to one field of use" does "not make the concept patentable").

## V. THE § 101 INQUIRY IS RIPE FOR RESOLUTION

The § 101 inquiry is properly raised at the pleading stage. *See Simio, LLC v. FlexSim Software Products*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *Cleveland Clinic*, 859 F.3d at 1360.

The Complaint here contains no factual allegations that, taken as true, could prevent resolution. Unlike cases where courts have denied § 101 motions at the pleading stage, the Complaint does not identify specific technological improvements over prior systems and does not allege facts showing that the claimed combination was non-routine or unconventional. Instead, it offers only the bare conclusion that the claims are "not directed to an abstract idea" and include "inventive components and functionalities." Complaint ¶¶ 38-39, 54-55. These are legal conclusions, not factual allegations entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Nor is claim construction a barrier. No potential construction can alter the fact that the plain language of the representative claims is directed to an abstract idea. *UTTO*, 119 F.4th at 994. The Complaint does not identify any claim term whose construction could affect the § 101 analysis. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360-61 (Fed. Cir. 2023) (plaintiff "must propose a specific claim construction or identify specific facts that need development").

That the claims are abstract is apparent from the face of the patents, and the Complaint provides no factual basis to conclude otherwise. The Court can and should resolve the § 101 question now.

## VI. CONCLUSION

The claims of U.S. Patent Nos. 10,110,430 and 10,462,003 are directed to the abstract idea of incorporating a virtual assistant into group communications to perform tasks that humans

11

have always performed. The claims use only generic computing components described at the highest level of abstraction. The Complaint offers no factual allegations that could create a fact issue precluding resolution on the pleadings. Accordingly, Defendants respectfully request that the Court dismiss the Complaint with prejudice for failure to state a claim because the Asserted Patents are ineligible under 35 U.S.C. § 101.

Dated: February 23, 2026

Respectfully submitted,
By: /s/ Phillip J. Haack
      Phillip J. Haack
Phillip J. Haack (CA 262060, admitted W.D. Tex.)
Ryan J. Marton (*pro hac vice* forthcoming)
Hector J. Ribera (*pro hac vice* forthcoming)
Carolyn Chang (*pro hac vice* forthcoming)
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone: (415) 360-2515
Email:    ryan@martonribera.com
           hector@martonribera.com
           carolyn@martonribera.com
           phaack@martonribera.com

*Counsel for Defendants Zoho Corporation Pvt. Ltd., Zoho Corporation and Zoho Technologies Corporation*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on February 23, 2026.


                              By:    /s/ *Phillip J. Haack*
                                            Phillip J. Haack